UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**SUSAN L. KONIK,**

               **Plaintiff,**              **CASE NUMBER: 13-10326**
                                         **HONORABLE VICTORIA A. ROBERTS**

**v.**

**COMMISSIONER OF SOCIAL
SECURITY,**

               **Defendant.**

_____/

<u>**ORDER**</u>

**I.**     **INTRODUCTION**

      This matter is before the Court on the parties' cross-motions for summary

judgment.  Magistrate Judge David R. Grand recommends that the Court grant

Defendant's motion and deny Susan Konik's motion.

      Since 1998 Konik has been diagnosed with chronic right lower quadrant pain;

since diagnosis, she continuously sought treatment.  Konik testified at the

Administrative Law Judge's (the "ALJ") hearing and her treating physician reported to

the ALJ, that Konik's pain was disabling.  The ALJ, however, discredited both Konik's

testimony and treating physician's opinion concerning her pain intensity.  The ALJ

discredited Konik's testimony because she once received a benefit from pain treatment,

but reported that medication did not offer relief.  Konik's treating physician was held

unreliable to the extent he relied on Konik's reports of pain.  This was error.  Konik's

medical records support that she is in constant pain and regularly has intense pain

bouts.  While she once received a benefit from injections, that benefit was short lived.

1

Konik's medical records show that after many doses, the injections did not provide relief.

The Court **REJECTS** this recommendation and **GRANTS IN PART** Konik's motion for summary judgment.  The Court declines to award disability benefits; but, the case is remanded to the ALJ for further proceedings consistent with this opinion.

## II.   PROCEDURAL HISTORY AND FACTS

On May 28, 2010, Konick filed an application for disability insurance benefits ("DIB").  Her insured status for disability ended on December 31, 2003; thus, Konik was required to show that she was unable to work on a full time basis prior to December 31, 2003.  Konik alleges that as of January 1, 1999, she was disabled due to lower quadrant and chronic abdominal pain and depression.  On October 22, 2010, her claim was denied.

On October 13, 2011, Konik appeared with counsel before ALJ J. Thomas McGovern, who considered the denial of benefits *de novo*.  Although the ALJ found that Konik was incapable of performing her previous work as a dispatcher, he also found that Konik was not disabled under the statute.  The ALJ denied benefits, concluding that Konik could perform a significant number of jobs available in the national economy.

The Appeals Counsel denied the Konik's request for review.  The ALJ's decision became the final decision of the Commissioner.

On January 26, 2013, Konik filed suit seeking judicial review of the Commissioner's decision as it relates solely to her physical impairments.  On January 23, 2014, Magistrate Judge Grand recommended that the Commissioner's decision be

affirmed.  Konik timely objected to the recommendation; the Commissioner failed to respond.  The matter is ready for review.

## III.   STANDARD OF REVIEW

The Court will affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole.  *Jones v. Comm'r Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (*citing* 42 U.S.C. § 405(g)).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could also support the opposite conclusion.  *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

This deferential standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  Thus, if the Commissioner's decision is supported by substantial evidence, it must stand, regardless of whether the Court would resolve the disputed facts differently.  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In reviewing the Commissioner's decision, the Court may consider only the record that was before the ALJ, and cannot review the evidence *de novo*, weigh the evidence, or make credibility determinations.  *See id.*

## IV.   ARGUMENT

The Social Security Act provides disability benefits to a wage earner if she establishes that her disability prevents her from performing any substantial gainful activity because of certain medically determinable physical or mental impairments.  42 U.S.C. § 423(d)(1)(A)("The term 'disability' means–inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .").

There are five steps the Social Security Administration uses to determine if a claimant is disabled and eligible for benefits, known as the "five-step sequential evaluation process."  20 C.F.R. § 404.1520.   Plaintiff must establish that: (1) she is not presently engaged in gainful employment; (2) she suffered from a severe impairment; and (3) the impairment met or was medically equal to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and was of sufficient duration.  *Id.*  If Plaintiff does not meet her burden at step three, she may still meet this burden at step four by proving she did not have the "residual functional capacity" ("RFC") to perform past work.  *Jones*, 336 F.3d at 474.

If Plaintiff satisfies her burden, the burden shifts to the Commissioner for the fifth step to show there is other work available in the economy that the claimant can perform.  *Id.*  "To meet this burden, there must be 'a finding supported by substantial evidence that [claimant] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (*quoting Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 529 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). This evidence may be in the form of Vocational Expert ("VE") testimony, but

4

only if the hypothetical question posed to the expert accurately portrays claimant's individual physical and mental impairments. *Id.*

### A.    Administrative Record

Magistrate Judge Grand sufficiently summarizes the administrative record in his report.  His summary is incorporated by reference here.  The Court relies on additional facts and history where noted.

### B.    ALJ's Findings

At the disability hearing, the ALJ took testimony from Konik and Pauline McEachin, a VE.  Konik was represented by counsel.  The ALJ concluded that Konik was not disabled and was not entitled to benefits.  He conducted the five-step sequential analysis.

At step one, he found that Konik has not engaged in substantial gainful activity since January 1, 1999 through December 31, 2003.

At step two, he concluded that Konik suffered various severe impairments, including: ilioinguinal neuropathy, chronic ilioinguinal pain, migraine headaches, and depression.

At step three, the ALJ found that Konik did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ concluded that Konik met her burden at step four to prove that she did not have the RFC to perform her prior work as a dispatcher.  However, the ALJ found that Konik had the RFC to perform sedentary, unskilled work.  But, the ALJ placed

limitations on Konik's ability to perform this work, concluding that Konik would need the option to sit or stand and could not be exposed to unprotected heights.

The ALJ did not credit Konik's testimony concerning the intensity, persistence and limiting effects of the pain that she feels, rendering her completely unable to work, to the extent that her testimony was inconsistent with the RFC assessment. The ALJ said "A review of the record reveals that the claimant has reported having abdominal pain beginning in 1998. However, x-rays and CT scans of the claimant's abdomen have been normal." (Tr. at 18). To further support discrediting Konik's testimony the ALJ said, "Despite the claimant's testimony that she did not receive any benefits from epidural steroid injections, Dr. Bacheldor's records indicate that the injections had given her about three weeks of pain relief and that she wanted to continue them." (Tr. at 18-19). Dr. Bacheldor reported that Konik was incapable of performing low stress jobs and that her pain was "disabling and that she had to frequently lie down due to the pain."

The State agency doctor concluded that Konik could perform work at the medium exertional level. Effectively, the ALJ gave the State agency doctor, who reviewed Konik's medical files, more weight than Konik's treating physician concerning Konik's ability to work.

The ALJ discounted Dr. Bacheldor's opinion that Konik could not work, saying that the record did not "suggest that the claimant was in such continuous distress that she would not have been able to work with the assistance of pain relief treatment such as the type that she was benefitting from." (Tr. at 19). The ALJ further disregarded Dr. Bacheldor's second opinion that Konik did not receive any significant relief from treatment and that she could not handle light stress jobs: "The record does not support

6

Dr. Bacheldor's conclusion that the claimant could not handle a job with light stress either.  He stated the claimant did not receive any significant relief from her treatment, but she told her doctors that the epidural injections had relieved all of her pain. Therefore, Dr. Bacheldor's opinion is given moderate weight." *Id.*

At step five, after considering Konik's age, education, work experience, and RFC, the ALJ concluded there are jobs that exist in significant numbers in the national economy which she can perform.  The ALJ relied on the VE's testimony that Konik could perform occupations such as a receptionist.

### C.    The Magistrate Judge's Recommendation

The Magistrate Judge recommends that the Court grant Defendant's Motion for Summary Judgment and deny Konik's Motion for Summary Judgment.  He concluded that the Commissioner's decision to deny Konik's application for DIB and Supplemental Security Income ("SSI") was supported by substantial evidence.

First, the Magistrate Judge concluded that substantial evidence supports the ALJ's findings that Plaintiff's impairments were not medically equivalent to those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A.

He said that the ALJ's determination was consistent with the medical opinion of the State agency; and, the weighing of Dr. Bacheldor's opinion was supported by substantial evidence.  The Magistrate Judge reasoned that Dr. Bacheldor's medical opinions were properly granted moderate weight, and in some instances, excluded because the treatment notes did not support his findings.  The Magistrate Judge said that Konik's medical record shows that Konik benefitted from the injections; and thus, Dr. Bacheldor's statement to the contrary was not controlling.  And, the Magistrate

7

Judge found that Dr. Bacheldor's opinion that Konik is disabled was properly excluded because disability determination is reserved to the Commissioner, alone.

The Magistrate Judge also found that the ALJ did not err in discrediting Konik's account of her pain because her pain was not "objectively" verifiable, and contradictory to the "medical evidence of record regarding the effectiveness of her treatment regimen." He said "the effect that the epidural injections had on relieving her pain, . . . go[es] to the issue of credibility."

### D. Plaintiff's Objections

Plaintiff asks the Court to reject the Magistrate Judge's recommendation, reverse the Commissioner, grant her motion for summary judgment and award benefits from her alleged onset date.

Konik has two objections to the Magistrate Judge's recommendation. First, she says that the Magistrate Judge and ALJ erred when they discounted her credibility because her pain could not be objectively verified. Second, Konik says the Magistrate Judge and ALJ erred by not giving her treating physician's medical opinions controlling weight and, in some instances, giving the opinions no weight at all.

## V. ANALYSIS

### A. The ALJ failed to properly evaluate Konik's credibility.

Konik contends that the ALJ erred in finding that her testimony was not entirely credible. Konik states that the ALJ's credibility determination is not supported by the record and that the ALJ erroneously required her to substantiate debilitating pain with objective medical evidence.

8

The ALJ noted that Konik's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but did not credit Konik's statements regarding the "intensity, persistence, and limiting effects" of her symptoms.  The Magistrate Judge found that the ALJ properly discounted Konik's credibility because she provided inconsistent testimony, given that the medical record shows that, at some point in time, Konik benefitted from epidural injections, coupled with the fact that her pain could not be verified by objective evidence.

This Court finds that the ALJ did not apply the proper legal standard in evaluating Konik's credibility.  "[S]ubjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record." *Jones*, 336 F.3d at 475 (6th Cir. 2003) (*citing Young v. Secretary of HHS*, 925 F.2d 146, 150-51 (6th Cir. 1990)).  When assessing a claimant's subjective complaints, the "ALJ may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).  An ALJ's credibility determinations about the claimant are to be given great weight.  *Walters*, 127 F.3d at 531 (citations omitted).  However, the credibility determinations must also be supported by substantial evidence. *Id.*

Social Security Ruling 96-7p sets the standard by which an ALJ must make credibility determinations.  *Blakely v. Comm'r Soc. Sec.*, 581 F.3d 399, 406 n. 1 (6th Cir. 2009); 20 C.F.R. § 402.35(b) ("Although Social Security Rulings do not have the same force and effect as statutes and regulations, 'they are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy'. . . .").  Social Security Ruling 96-7p says that an ALJ  may not

9

make credibility determinations based upon "intangible or intuitive notion about an individual's credibility.  Soc. Sec. Rul. 96-7p, 1996 SSR LEXIS 4 at *3, 1996 WL 374186, at *2 (July 2, 1996).  "In making a credibility determination, Social Security Ruling 96-7p, 1996 SSR LEXIS 4 provides that the ALJ must consider the record as a whole, including objective medical evidence; the claimant's statements about symptoms; any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant; and any other relevant evidence."  *Reynolds v. Comm'r of Soc. Sec., 424 Fed. Appx. 411, 2011 WL 1228165, at *2 (6th Cir. 2011) (citing* Soc. Sec. Rul. 96-7p, 1996 SSR LEXIS 4 at *3, 1996 WL 374186, at *2.).

Furthermore, pursuant to Social Security Ruling 96-7p, an ALJ "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 SSR LEXIS 4 at *3, 1996 WL 374186, at *2 .  The Sixth Circuit interpreted this requirement to imply that "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F. 3d. at 248.

The ALJ's consideration of Konik's subjective assertions of the symptoms associated with her disability are not consistent with the Administration's requirements. While the ALJ stated his reason for discrediting Konik, his reasoning is flawed: the ALJ misapplied the law and twisted Konik's earlier statements.

10

First, the ALJ noted that while Konik says she is in pain, "x-rays and CT scans of the claimant's abdomen have been normal."  But, there is no requirement that claims of pain be verified by medical evidence.  *Felisky v. Bowen*, 35 F.3d 1027. 1039 (6th Cir. 1994).

And, a claimant may not be discredited because claims of pain cannot be substantiated by objective evidence, standing alone.  But if, coupled with other reasons, lack of objective evidence may be considered. *Id.*

Thus, the Court turns its attention to the additional reasons the ALJ provided for discrediting Konik.

The ALJ's second reason for discrediting Konik was because he found that Konik's subjective allegation of pain was contradicted by the record.  This finding is not supported by substantial evidence.

The ALJ concluded that Konik's testimony and reports saying that she did not receive a benefit from the epidural injections was contradictory, because her medical records show that she reported no pain when receiving the injections.  The ALJ's conclusion, however, is a misscharacterization of Koink's testimony and reports.

Konik did report no pain when receiving the injections.  But, as time went on, she reported that the injections were not relieving her pain.  Eventually, Konik stopped the injections.  Medical records support that she told her treating physician and the physician who administered the injections, that the procedure was costly and did not work.  Even the state Agency doctor concluded, as the ALJ stated in his report, "after some time the injections did not provide her relief anymore."  Overwhelming evidence supports Konik's testimony. Consistencies between the claimant's symptoms and the

11

varying pieces of evidence should be analyzed.  *Rogers v. Comm'r of Soc. Sec.*, 486 F. 3d. 234, 248 (6th Cir. 2007) ("Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.").

To the extent the ALJ's credibility determination is also based on Konik's ability to perform some work tasks and other activities, it, too, is not supported by substantial evidence.  *See* 20 C.F.R. § 404.1572(c) ("Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity."); *Rogers*, 486 F.3d at 248-49 (the minimal daily functions of driving, cleaning an apartment, caring for pets, laundry, reading, exercising and watching the news are not comparable to typical work activities); *Cohen v. Sec'y Dept. Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992) (the fact that disability claimant continued ballroom dancing and attended law school during period for which she claimed disability benefits did not warrant a finding that she could maintain substantial gainful employment).

The ALJ again, mischaracterized the evidence.  *White*, 312 F. App'x at 789 (6th Cir. 2009) (unpublished opinion) (finding that ALJ mischaracterized testimony regarding daily activities).   Although Konik testified that she did a little bookkeeping work for her husband, she also stated that some days she is in so much pain that she does not get out of bed and is unable to assist.

Konik's testimony is supported by the record as a whole.  Konik's husband submitted a function report saying that some days Konik is able to do small tasks, she

cannot work full-time, her sleep is irregular, her pain is disabling, she does not do household tasks because the pain is severe and their life has change drastically because of Konik's illness; she cannot even get health insurance.  Konik's medical records show that she consistently complained of the pain and her inability to function regularly.  The ALJ correctly held that "Konik worked after the alleged disability onset date but this work activity does not rise to the level of substantial gainful activity . . . ."

Given this entire record and the weight to be given relevant evidence, *Reynolds,* 424 Fed. Appx. at *2, the Court is compelled to remand this matter so that the ALJ can reevaluate Konik's credibility with respect to her subjective complaints of symptoms related to her impairments, in accordance with this opinion.

**B.    The ALJ erred because she failed to evaluate or weigh the opinions of Konik's treating physician**.

Konik argues that the ALJ failed to consider and weigh the opinions of her treating physician.  The ALJ gave Konik's treating physician opinions moderate and/ or no weight, for the same reasons he discredited Konik's testimony.  The ALJ said Konik once benefitted from the injections, but the physician reported that nothing alleviated Konik's pain.

The Magistrate Judge found the ALJ's reasoning sufficient to discredit Konik's treating physician, as it was supported by the record. The Magistrate Judge observed that the "ALJ had good reason to reject Dr. Bacheldor's conclusions to the extent they were based on Konik's later reports that she had received no relief from these injections."  And, an ALJ "is not required to give any special weight to a treating source's

13

conclusion that a claimant is disabled, as this conclusion is reserved to the Commissioner alone, based on all the evidence of record."

While it is true that the ultimate decision of disability and whether to award DIB rests with the ALJ, the Act requires the ALJ to weigh the opinions of treating physicians when arriving at this ultimate decision.

If an ALJ does not give a treating physician's opinions controlling weight, he must specifically indicate why.  None of the reasons offered by the ALJ supports not giving the opinions of Konik's treating physician controlling weight.  20 C.F.R. § 404.1527 governs how an ALJ evaluates medical opinion evidence.  Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [his or her] physical or mental restrictions."  *Id.* § 404.1527(a)(2). An ALJ is required to evaluate every medical opinion, regardless of its source.  *Id.* § 404.1527(d).  A treating physician's medical opinion is given controlling weight if the ALJ finds that the opinion on the nature and severity of the claimant's impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *Id.* § 404.1527(d)(2).

An ALJ must consider several factors when deciding what weight to assign a treating source's medical opinion when he does not assign it controlling weight.  *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 993 (N.D. Ohio 2003).  Pursuant to 20 C.F.R 404.1527 these factors include: (1) length of the treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3)

14

supportability of the opinion; (4) consistency of the opinion with the record as a whole; and (5) specialization of the treating source.  *Id.* §§ 404.1527(d)(2)-(6), 416.917.  Social Security Ruling 96-2p explains that these regulations "require[ ] that the adjudicator will always give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)."  Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9, at *11, 1996 WL 374188, at * 5 (July 2, 1996).  "[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Id.*

Konik's treating physician's opinions should not have been disregarded simply because Konik's treating physician did not discredit Konik's evaluation of her pain.

Further, the *Blakely v. Comm'r Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) court observed that treating source medical opinions are entitled to deference, even when not controlling.  *Blakely,* 581 F.3d. at 408 ("Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.");  *see also Rogers*, 486 F.3d at 242 ("[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding.").  The ALJ should generally give more weight to these opinions, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring unique perspective to the medical

15

evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations or brief hospitalizations."  20 C.F.R. § 404.1527(d)(2).

The same reasoning applies here.  The ALJ must properly weigh all of the § 1527(d)(2) factors when evaluating the medical opinions concerning Konik's functional limitations.  Opinions from non-treating sources are evaluated under a similar rubric pursuant to § 1527(d)(1), (3)-(6); the ALJ simply considers the "[e]xamining relationship" instead of the "[t]reatment relationship."

Under the Act, even the examining physician's medical opinion is entitled to greater deference than a non-examining source, such as the Department of Disability Service consultants.  20 C.F.R. § 404.1527(d)(1).  Without good reason, the ALJ subordinated the opinion of a doctor who spent several years treating Konik to a doctor who only looked at Konik's records.  The ALJ's rejection of Dr. Bacheldor's opinions must be explained and supported by the record.

Furthermore, there are several opinions of Konik's treating physician that were not discussed when the ALJ determined Konik's RFC.  For example, Dr. Bacheldor concluded that Konik would need to lie down and take six to ten unscheduled breaks a day.  These opinions must be addressed.

Because the ALJ wrongfully rejected the opinion of Konik's own treating physician -- that she suffered from continuing pain -- and completely ignored other opinions, this case is remanded.  The ALJ's reassessment of Konik's RFC must classify and give appropriate weight to each of the opinions in the record.

**VI.    CONCLUSION**

16

The Commissioner's determination of disability is not supported by substantial evidence.  The Court **REJECTS** the Magistate Judge's recommendation; **GRANTS IN PART** Konik's motion for summary judgment; and **REMANDS** the case for reconsideration consistent with this opinion.

**IT IS ORDERED.**

                                    __S/Victoria A. Roberts___
                                    Victoria A. Roberts
                                    United States District Judge

Dated:  March 14, 2014

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 14, 2014.<br><br>s/Linda Vertriest_____<br>Deputy Clerk |